UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAVANTA MCLILLY,

                Petitioner,                    Case Number: 18-10397
                                                    Honorable David M. Lawson

v.

ANTHONY STEWART,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Cavanta McLilly is in the custody of the Michigan Department of Corrections at its G. Robert Cotton facility in Jackson, Michigan serving a prison sentence for assault with intent to murder, armed robbery, carrying a concealed weapon, felon in possession of a firearm, and felony firearm convictions. He filed a petition for a writ of habeas corpus through counsel under 28 U.S.C. § 2254 raising three claims for relief: the admission of lay opinion testimony denied him a fair trial; he received ineffective assistance of counsel at trial and on direct appeal; and the sentence imposed for the assault with intent to murder conviction violated his Sixth Amendment right to a trial by jury. Because McLilly has not shown that the state courts contravened or unreasonably applied federal law in the disposition of his claims, the Court will deny the petition.

I.

A Genesee County, Michigan jury determined that McLilly shot Hergid Singhin in the chest during a 2012 armed robbery of a convenience store. The Michigan Court of Appeals summarized the facts adduced at trial in its opinion on direct appeal as follows:

> Before the robbery, defendant approached three young men, Demetrius Robinson, Anthony Watkins, and AJR, a minor, and asked them to go into the store and drop a bottle on the floor; defendant promised them one hundred

> dollars apiece if they did this.  The three then went into the store and Robinson
> dropped a bottle on the floor.  An employee of the store, Hergid Singh, left his
> bulletproof enclosure to clean up the broken bottle.  After he did so, defendant
> and two other men demanded money from him at gunpoint, and took money
> from the store's cash register.  Defendant made Singh lie down on the floor,
> stood over him, and shot him once in the chest.  A witness, Madison Wortham,
> saw at least two men enter the store wearing masks, and called 911.  Singh
> identified defendant as the man who had robbed and shot him.  Robinson and
> AJR identified defendant as the man who had offered them money.  Wortham
> identified a picture taken from a store video as depicting two men who had
> entered the store, although he testified that he could not see their faces because
> of their masks.  Defendant denied committing the robbery or the shooting,
> although he did admit to being in the store earlier to make a purchase.

*People v. McLilly*, No. 318627, 2015 WL 302676, at *1 (Mich. Ct. App. Jan. 22, 2015).

During the trial, two police officers, William Jennings and Michael Dumanois, were permitted to testify over defense objection that the masked robber depicted on the store surveillance video was McLilly.  The video was received in evidence as well.

The jury found McLilly guilty of armed robbery, assault with intent to murder, carrying a concealed weapon, possession of a firearm by a felon, and possession of a firearm in the commission of a felony (felony-firearm).  On September 27, 2013, McLilly was sentenced as a fourth habitual offender to concurrent prison terms of 40 to 60 years for armed robbery, 43 to 65 years for assault with intent to murder, 2 to 10 years for carrying a concealed weapon, and 5 to 30 years for being a felon in possession of a firearm.  He was sentenced to an additional consecutive two-year term for felony-firearm.  McLilly's convictions were affirmed on appeal.  *People v. McLilly*, 2015 WL 302676, *lv. den.* 498 Mich. 866 (2015).

McLilly filed a motion for relief from judgment, which was denied.  *People v. McLilly*, No. 13-033099-FC (Genesee Cnty. Cir. Ct. Oct. 21, 2016) (ECF No. 5-14, PageID.1096-1100).

The Michigan appellate courts also denied relief.  *People v. McLilly*, No. 3356694 (Mich. Ct. App. March 29, 2017), *lv. den.* 501 Mich. 946 (2017).

McLilly then filed the present petition for a writ of habeas corpus asserting the following issues:

> I.      The admission of opinion testimony regarding the identity of the person in the surveillance video resulted in the denial of a fair trial by a jury.
>
> II.     Petitioner's attorneys at trial and on direct appeal were constitutionally ineffective.
>
> III.    Sentence was imposed as to the assault with intent to murder conviction in violation of the Sixth Amendment right to trial by jury.

Pet. at 9-26, ECF No. 1. PageID.24-41.

The warden filed an answer to the petition raising the defense of procedural default as to the second claim.  McLilly has filed a reply to Respondent's answer and a supplemental brief.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Court finds it unnecessary to address the procedural question.  It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."

*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).  The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

## A.

McLilly's first claim is based on the erroneous admission of the police officers' opinion testimony that the person depicted in the surveillance video was the petitioner.  The state court of appeals agreed that the testimony should not have been received in evidence because it "was impermissible lay opinion testimony" that "invaded the province of the jury." *People v. McLilly*, No. 318627, 2015 WL 302676, at *2-3 (Mich. Ct. App. Jan. 22, 2015).  However, that court determined that the error was harmless because of the abundant legitimate identification evidence in the record.  McLilly contends that the evidentiary error rendered his trial fundamentally unfair and violated his rights under the Due Process Clause.

State evidentiary rulings will not trigger federal due process concerns unless the evidence admitted (or excluded) renders the trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The Supreme Court has stated that for evidence that is so unfairly prejudicial "that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  The evidentiary ruling must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).  A fundamental conception of justice is one that is "rooted in the

traditions and conscience of our people." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

The store video received in evidence was a composite of 14 cameras. McLilly, 2015 WL 302676. Before it was received, detective William Jennings described what he saw on the videotape. Several times, he identified one of the masked robbers depicted in the video as McLilly. He also identified McLilly as one of the robbers depicted in still photos created from the store video. Police officer Michael Dumanois also identified McLilly as the masked robber. Defense counsel objected numerous times on the ground that the testimony invaded the province of the jury. The trial court overruled defense counsel's objections, incongruously finding that the testimony went "to the weight" and that it was admissible because the witnesses conducted the actual scene investigation and were permitted to testify about what they personally saw. After those police witnesses testified, the video was played for the jury and select still images created from the video by the Michigan State Police were admitted as exhibits.

The Michigan Court of Appeals determined on direct appeal that the error was harmless because two witnesses — the young men who were offered money to break the bottle in the store — identified McLilly as the person who talked to them, and Hergid Singh, the shooting victim, positively identified him as well. *Id.* at *3. And, of course, the jury saw the video footage and was permitted to make its own assessment.

The state court of appeals's finding of harmlessness has double significance. First, if the evidentiary error is harmless, it could not violate "fundamental conceptions of justice." For a habeas court, a constitutional error that implicates trial procedures is considered harmless if it did

not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). That test is much more rigorous than the one applied on direct review. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

Second, the state court's harmlessness decision is itself entitled to deference. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). The habeas court may not grant relief unless the state court's "'*harmlessness determination itself* was unreasonable.'" *Ibid.* (citations omitted). The application of that principle is satisfied by adhering to *Brecht*'s teaching because where "the state court adjudicated [the petitioner's] claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Id.* at 270. In such cases, "a federal habeas court need not 'formal[ly]' apply both *Brecht* and '*AEDPA/Chapman*.'" *Id.* at 268.

McLilly cannot clear *Brecht*'s high hurdle because the evidence against him was substantial. To recap, Demetrius Robinson identified McLilly as the person who offered him and his friends money to go inside the BP gas station and break a bottle. Robinson did as McLilly requested and then left the store. As he waited by the side of the building for his money, he saw someone exit the car where McLilly had been a passenger and enter the store with a gun, but he was unable to identify that person as McLilly. Anthony Watkins, Robinson's companion that day,

also identified McLilly as the person who offered them money to break a bottle inside the store. After he and Robinson exited the store, Watkins saw someone get out of the car with a gun. and Allah' Jawan Reeder, the third youth, testified that McLilly was the person who offered them money to divert the clerk's attention. Hergid Singh identified McLilly as the person who shot him, asserting that he was able to identify McLilly even though McLilly was wearing a mask.

That evidence, coupled with the video images and still shots that the jury reviewed, tips the balance substantially in favor of the state. To grant habeas relief, a federal court must have at least "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht*, 507 U.S. at 627). "'[G]rave doubt' about whether the error was harmless means that 'the matter is so evenly balanced that [the court] feels [it]self in virtual equipoise as to the harmlessness of the error.'" *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (quoting *O'Neal*, 513 U.S. at 435). That is not the case here. The state court of appeals's decision that the unfortunate evidentiary error was harmless did not contravene or unreasonably apply federal law.

B.

In his second claim, McLilly argues that he received ineffective assistance of trial and appellate counsel. He says that trial counsel was ineffective by failing to object to an "undisputed accomplice instruction" and by failing to object to the above-the-guidelines sentence imposed for the armed robbery conviction. He contends that appellate counsel was ineffective by failing to raise these issues on direct appeal.

-8-

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S.

351, 357-58 (2013)).  And under AEDPA, obtaining relief under *Strickland* is even more difficult

because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when

the two apply in tandem, review is doubly so."  *Richter*, 562 U.S. at 105 (internal citations and

quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the

state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, 571 U.S. 12, 15

(2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562

U.S. at 105.

The jury instruction that McLilly believes his lawyer should have contested focused on

Demetrius Robinson as an accomplice.  The trial court told the jury:

> Mr. Robinson has testified that he took part in the crime that the Defendant is charged with committing in count one, armed robbery.  He has now been convicted of charges arising out of the commission of that crime.  The evidence clearly shows that Demetrius Robinson was guilty of the same crime, and that is armed robbery, as an aider and abettor, with which the Defendant McLilly is charged in count one, the armed robbery count.
>
> Such a[] witness is called an accomplice. You should examine an accomplice's testimony closely, and be very careful about accepting it.  You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable.
>
> However, there is nothing wrong with the Prosecutor using an accomplice as a witness.  You may convict the Defendant based only on an accomplice's testimony if you believe the testimony and if it proves the Defendant's guilt beyond a reasonable doubt.
>
> When you decide whether you believe an accomplice, consider the following:
>
> Was the accomplice's testimony falsely slanted to make the Defendant seem guilty, because of the accomplice's interests, biases, or for some other reason?
>
> Has the accomplice been promised that he will not be prosecuted, or promised a

-10-

> lighter sentence, or in this case, actually, it's allowed to plead to a lesser he is charged unarmed robbery?
>
> If so, could this have influenced his testimony?
>
> Does the accomplice have a criminal record?
>
> In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness.
>
> You should be sure you have examined it closely before you base a conviction on it.

ECF No. 5-8, PageID.913-14.

McLilly criticizes this instruction because it was factually inaccurate in two material respects. First, the instruction incorrectly stated that Robinson was "convicted" of a crime. Robinson entered a guilty plea pursuant to Michigan's Holmes Youthful Trainee Act (HYTA), Mich. Comp. Laws § 762.11. HYTA is a hybrid diversion/probation statute that allows an offender between the ages of 17 and 24 years to plead guilty, and the court, without entering a formal adjudication of guilt, may impose a supervisory punishment. Mich. Comp. Laws § 762.11(1). If the defendant complies with certain conditions, "upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings." Mich. Comp. Laws § 762.14(1). The statute specifies that "[a]n assignment of an individual to the status of youthful trainee as provided in this chapter is not a conviction for a crime[.]" Mich. Comp. Laws § 762.14(2). The trial court erred in characterizing Robinson's guilty plea under HYTA as a conviction. McLilly contends that his trial counsel performed deficiently when he did not object to this aspect of the jury instruction.

-11-

The trial court addressed and rejected that argument in its opinion denying the motion for relief from judgment, which was affirmed summarily by the state appellate courts. It held that defense counsel was not ineffective by failing to object to this instruction because the evidence presented supported the instruction. The court reasoned that counsel, therefore, did not act unreasonably when he did not object to the instruction and that McLilly was not prejudiced by counsel's failure to object.

Although that aspect of the jury instruction technically was incorrect, the trial court's performance and prejudice conclusions did not unreasonably apply clearly established federal law. It would have been reasonable for defense counsel to conclude that the instruction, as a whole, adequately conveyed Robinson's accomplice status regardless of a formal guilt adjudication. The distinction between a guilty plea under HYTA and a criminal conviction is critical to a youthful offender, but this distinction was far less important to McLilly's defense. Whether the jury believed Robinson pleaded guilty but was not formally convicted or that Robinson had been convicted likely was not pertinent to the jury's evaluation of his testimony and counsel was reasonable in declining to object.

McLilly also challenges the statement that Robinson had been convicted of armed robbery. This was incorrect. Robinson was charged with armed robbery as an aider and abettor, but he pleaded guilty to unarmed robbery. The trial court held that counsel was not ineffective by failing to object to the instruction on the basis of this error.

That decision likewise did not contravene or unreasonably apply federal law. Although the instruction at first incorrectly stated that Robinson had pleaded guilty to armed robbery, the

-12-

trial court corrected this error a few sentences later by instructing the jury that Robinson had received a benefit from his testimony, namely he was permitted to "plead to a lesser … charge[] unarmed robbery."  The instructions sufficiently cautioned the jury about the considerations it should take into account when evaluating Robinson's testimony.  Further, the instructions as a whole also clearly instructed the jury as to each element of the charged crimes and the burden of proof.

McLilly also argues that his defense attorney was ineffective because he failed to object to an upward departure on McLilly's sentence for armed robbery. Michigan uses an indeterminate sentencing scheme for custodial sentences in which the sentencing court sets a minimum term of imprisonment that may be as long as two-thirds of the statutory maximum sentence.  *See* Mich. Comp. Laws § 769.34(2)(b); *People v. Babcock,* 469 Mich. 247, 255 n. 7, 666 N.W.2d 231, 237 n. 7 (2003) (citing *People v. Tanner,* 387 Mich. 683, 690, 199 N.W.2d 202 (1972)). The statutory maximum automatically becomes the top end of the statutory term.  If the statutory maximum sentence is life in prison, as in the case of armed robbery, then the sentencing court has discretion to set the maximum term as well.  *Babcock,* 469 Mich. at 256 n. 7, 666 N.W.2d at 237 n. 7.  Michigan's sentencing guidelines prescribe a range for the minimum sentence.  The applicable guideline range for the armed robbery minimum sentence in this case was 135 to 450 months (11-1/4 to 37-1/2 years).  The maximum sentence was life in prison.  The petitioner was a fourth habitual offender.  The court imposed a sentence of 480 to 720 months (40 to 60 years), that is, 30 months above the guideline range for the minimum sentence.  The court did not articulate

any basis for exceeding the guidelines as was required under state law.  *See* Mich. Comp. Laws § 769.34(3).

On state-court collateral review, the State conceded that counsel's failure to object to a sentence above the guidelines range was objectively unreasonable but argued that McLilly was not prejudiced by counsel's failure because the minimum sentence of 45 years for his assault-with-intent-to-murder conviction subsumed the armed robbery sentence.  The trial court did not address counsel's defective performance; it agreed that no prejudice occurred because of the concurrent sentence on the assault conviction that exceeded the armed robbery sentence.  ECF No. 5-14, PageID.1099.

That decision is consistent with federal law.  It is true that prejudice exists if there is a reasonable probability that a petitioner would have avoided even "a minimal amount of additional time in prison" were it not for counsel's performance at sentencing.  *Glover v. United States*, 531 U.S. 198, 203 (2001).  *See also McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) ("An error by counsel at sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment.").  But McLilly did not receive any extra prison time because his total custodial sentence was governed by the assault sentence.

McLilly has not shown a redressable violation of his right to counsel under the Sixth Amendment.

## C.

Last, McLilly argues that his sentence violates the Sixth Amendment jury trial guarantee because the sentencing judge used facts not admitted by McLilly or found by a jury beyond a

-14-

reasonable doubt to enhance his sentence by increasing the sentencing guideline range. The sentencing court scored 50 points under Offense Variable 6 based upon the judge-found fact that McLilly had a premeditated intent to kill, which increased the offense level and the corresponding guideline range.

The Sixth Amendment's guarantee of a trial by jury means that "[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). In *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018), the court of appeals granted habeas relief to a habeas petitioner whose mandatory minimum sentence was increased based upon judge-found facts and who was sentenced after *Alleyne* was decided. *Id.* at 714-15. The Sixth Circuit held that "*Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime." *Id*. at 714.

*Alleyne* applies to McLilly's case, as he was sentenced approximately two months after *Alleyne* was decided. *Alleyne* represents clearly established federal law in effect before McLilly's convictions and sentences became final. In 2015, well after McLilly's sentencing, the Michigan Supreme Court held that Michigan's sentencing guidelines scheme, which allowed juridical fact-finding to increase the floor of the sentencing guidelines range, violated the Sixth Amendment. *People v. Lockridge*, 498 Mich. 358, 879 N.W.2d 502 (2015). As a remedy, the court declared that the guidelines are advisory. *Id.* at 365, 879 N.W.2d at 506. McLilly's sentence, therefore, was imposed before the state sentencing guidelines became advisory and the sentence violated his rights under the Sixth Amendment.

Here, the trial court denied McLilly's claim on collateral review holding that *Lockridge* was not applicable to cases on collateral review without mentioning *Alleyne*. Alternatively, the sentencing court held that even if the guidelines were advisory rather than mandatory, "the Court would not have imposed a materially different sentence." ECF No. 5-14, PageID.1100. That pronouncement suggests that the error was harmless.

Once again, this Court must apply *Brecht* to determine if the error had a "substantial and injurious effect or influence" on the outcome of the case. *Brecht*, 507 U.S. at 637. Applying that rubric, keep in mind that the error here was not so much that the guideline scoring was driven by judge-found facts, but that the state sentencing scheme at the time mandated application of the guidelines. *See Reign v. Gidley*, 929 F.3d 777, 780 (6th Cir. 2019) ("[T]he constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."). The sentencing court here stated that it would have imposed the same sentence for the assault conviction under an advisory guideline regime.

McLilly argues that the error is not harmless because the judge who presided over his sentencing and motion for relief from judgment retired in 2018. He maintains that any claim that the replacement judge would impose the same sentence is "purely speculative." There is something to that argument. The remedy prescribed by the Michigan Supreme Court in cases where a pre-*Lockridge* sentence was based on judge-found facts is to "remand[] to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Lockridge*, 498 Mich. at 397, 870 N.W.2d at 523–24. If this Court were

-16-

to grant habeas relief, that would be the proper remedy here.  And who is to say that a successor judge would look at the case the same way as the original sentencing judge?

But McLilly has no constitutional right to be sentenced by a particular judge.  *Fitzgerald v. Withrow*, 292 F.3d 500, 503 (6th Cir. 2002) (finding no constitutional right to a trial before a particular judge); *Firishchak v. Holder*, 636 F.3d 305, 310 (7th Cir. 2011) ("The Fifth Amendment's due process clause guarantees the right to an impartial decisionmaker, . . . but not to a particular judge.") (citations omitted).  This Court must decide the case on the record before it, which includes the sentencing judge's assurance that she would not have imposed a materially different sentence under current law.  That statement comports with *Alleyne* and the state law counterpart.  And McLilly cites no precedent to support his argument that he is entitled to a second chance for a post-*Alleyne/Lockridge* state-court review of his sentence.  *See Reign v. Gidley*, 929 F.3d 777 (6th Cir. 2019) (holding that a state sentencing court's determination the same sentence would have been imposed even if the guidelines had been advisory was sufficient to render an *Alleyne* error harmless).

McLilly has not established a right to relief on this claim.

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

-17-

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 17, 2021